1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON

9

10   SHEILA R. MERCADO,

11                       Plaintiff,                    CASE NO. 2:15-cv-01592 JRC

12          v.                                         ORDER ON PLAINTIFF'S
                                                       COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,
15
                         Defendant.
16

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 11, 22, 23).

21          After considering and reviewing the record, the Court concludes that the ALJ

22   erred in evaluating the medical evidence. Although the ALJ indicated that she could not

23   discern the basis for the opinions of the treating physician, she failed to attempt to

24

recontact the physician for clarification. The ALJ also failed to explain her reasoning for finding that plaintiff's activities and longitudinal findings demonstrate capabilities contradicted by the opinions of the treating physician and failed to account for significant, probative evidence when so finding. Despite the ALJ's discussion of much of the evidence, these failures are not harmless errors and require reversal and remand of this matter.

Therefore, this matter is reversed and remanded to the Administration for proceedings consistent with this Order.

<u>BACKGROUND</u>

Plaintiff, SHEILA R. MERCADO, was born in 1959 and was 52 years old on the amended alleged date of disability onset of April 9, 2012 (*see* AR. 17, 47, 217-21, 222-29). Plaintiff left school in the 11th grade and although she's tried twice to get her GED she has been unsuccessful (AR. 74-75).  Plaintiff has worked in shipping and receiving, as a machine operator, doing housekeeping, cleaning glasses lens, and as a temporary laborer (AR. 250-61, 272).  She last worked driving cars off of ships to be transported by train but was laid off when the job was completed (AR. 60-62).

According to the ALJ, plaintiff has at least the severe impairments of "affective disorder not otherwise specified (NOS), anxiety disorder NOS, and personality disorder NOS (20 CFR 404.1520(c) and 416.920(c))" (AR. 20).

At the time of the hearing, plaintiff was living in a DHS emergency shelter (AR. 57-58).

1

## PROCEDURAL HISTORY

2

3

4

5

6

7

8

9

10

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* AR. 88-97, 98-107, 110-24, 125-39). Plaintiff's requested hearing was held before Administrative Law Judge Laura Valente ("the ALJ") on September 24, 2013 (*see* AR. 43-85). On June 9, 2014, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 14-42).

11

12

13

14

15

16

17

18

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ properly evaluated the opinions of Wayne Webster, M.D., and adequately developed the record as to his treatment of plaintiff; and whether or not the ALJ properly evaluated the opinions of Melanie Mitchell, Psy.D.; (2) Whether or not the ALJ properly evaluated the opinions of Lisa Cowden, Ph.D.; whether or not the ALJ properly evaluated the opinions of John Gilbert Ph.D. and Leslie Postovoit, Ph.D.; and whether or not the ALJ properly evaluated plaintiff's impairments under the Social Security Listings; and (3) Whether or not the ALJ properly evaluated plaintiff's credibility (*see* Dkt. 11, p. 1).

19

## STANDARD OF REVIEW

20

21

22

23

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

24

1  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

2  1999)).

3  <u>DISCUSSION</u>

4  (1)   **Whether or not the ALJ properly evaluated the opinions of treating**
       **physician, Dr. Wayne Webster, M.D., and examining doctor, Dr.**
5      **Melanie Mitchell, Psy.D.**

6

7      Plaintiff contends that the ALJ erred when evaluating the opinions of treating

8  physician, Dr. Wayne Webster, M.D. and the opinions of examining doctor, Dr. Melanie

9  Mitchell, Psy.D. (*see* Dkt. 11). Defendant contends that there is no error (*see* Dkt. 22).

10     When an opinion from an examining or treating doctor is contradicted by other

11 medical opinions, the treating or examining doctor's opinion can be rejected only "for

12 specific and legitimate reasons that are supported by substantial evidence in the record."

13 *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews v. Shalala*, 53 F.3d

14 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see*

15 *also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and

16 psychologists or other acceptable medical sources that reflect judgments about the nature

17 and severity of your impairment(s), including your symptoms, diagnosis and prognosis,

18 what you can still do despite impairment(s), and your physical or mental restrictions").

19

20     Dr. Wayne Webster, M.D. is one of plaintiff's treating physicians (AR. 1180).

21 According to the Ninth Circuit, "[b]ecause treating physicians are employed to cure and

22 thus have a greater opportunity to know and observe the patient as an individual, their

23 opinions are given greater weight than the opinion of other physicians." *Smolen v.*

24

ORDER ON PLAINTIFF'S COMPLAINT - 4

1   *Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citing *Rodriguez v. Bowen*, 876 F.2d 759,

2   761-762 (9th Cir. 1989); *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

3        On September 27, 2013, Dr. Webster provided an opinion regarding limitations on

4   plaintiff's ability to work (AR. 1180). He indicated as follows:

> I am a physician treating [plaintiff]. She has been diagnosed with Major
> Depressive Disorder, recurrent, severe, and Psychosis Not Otherwise
> Specified. She is followed closely by NAVOS psychiatric staff and is on
> a fairly complicated psychiatric medication regimen with which she has
> been compliant. While [plaintiff] has complained of depression for many
> years, she has experienced several episodes of decompensation in the last
> two years which have required hospitalization.
>
> [Plaintiff] suffers from chronic back pain, and spinal imaging indicates
> disc herniation at L1-L2 and protrusion at L5-S1. Multiple nerve root
> block injections have been performed. She takes Gabapentin for her
> chronic pain, and continues to experience numbness in her lower
> extremities. Surgery will be considered once her psychiatric concerns are
> under better control.
>
> [Plaintiff's] additional symptoms include a long-standing experience of
> hearing voices that have caused her significant distress, and have led to
> her making both suicidal and homicidal gestures. She experiences
> depressive symptoms including profound sadness and despondency,
> inability to maintain basic hygiene, fatigue, feelings of worthlessness,
> and loss of interest in activity.
>
> It is my opinion that [plaintiff] is unable to maintain competitive
> employment. [Plaintiff] is markedly limited in her ability to concentrate
> and perform on a consistent basis due to the combination of her pain and
> mental health concerns. I anticipate that she would have severe limitation
> in her ability to work undistracted, and that even minor stressors in the
> work environment could cause her to decompensate. She would likely
> have frequent absences due to the symptoms, and it would be very
> difficult for her to follow instructions from a supervisor or to interact
> appropriately with coworkers.

(*Id*.).

The ALJ gave minimal to no weight to this opinion from plaintiff's treating physician, referring to it as an "equivocal opinion" (AR. 33). However, there is nothing equivocal about this opinion. Similarly, although the ALJ found that Dr. Webster expressly based his opinion solely on plaintiff's subjective reporting of symptoms as well as her psychiatric hospitalizations, the record does not substantiate this finding. Instead, Dr. Webster indicated that "It is my opinion that plaintiff is unable to maintain competitive employment" (*see id.*). Furthermore, although the ALJ provided her own assessment of plaintiff's psychiatric hospitalizations, the ALJ did not explain why her finding is more correct than that of plaintiff's treating physician. She also failed to discuss significant, probative evidence contrary to her assessment, as noted below, *see infra. See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)) (the ALJ "may not reject 'significant probative evidence' without explanation").

The ALJ also found that Dr. Webster's opinion is inconsistent with plaintiff's activities, referencing the previous portion of the written decision in which the ALJ noted plaintiff's cleaning, baking and cooking; ability to shop; meeting with a knitting group; seeing her friends from church; teaching looming skills to people in her church and community; knitting and crocheting with a knitting and crocheting group; reading; visiting the library once per week; and watching TV (*see* AR. 22-23, 33).

Although referenced in the context of a plaintiff's subjective statements, the Ninth Circuit has noted that "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than

merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014)

(citing *Smolen v. Chater*, 80 F.3d , 1273, 1287 n.7 (9th Cir. 1996) ("The Social Security

Act does not require that claimants be utterly incapacitated to be eligible for benefits, and

many home activities may not be easily transferable to a work environment where it

might be impossible to rest periodically or take medication" (citation omitted in

original)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are

not easily transferable to what may be the more grueling environment of the workplace,

where it might be impossible to periodically rest or take medication"). The Ninth Circuit

also quoted a Seventh Circuit case:

> The critical difference between activities of daily living and activities in
> a full-time job are that a person has more flexibility in scheduling the
> former than the latter, can get help from other persons  .  .  . , and is not
> held to a minimum standard of performance, as she would be by an
> employer. The failure to recognize these differences is a recurrent, and
> deplorable, feature of opinions by administrative law judges in social
> security disability cases.

*Id*. (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (citations omitted in

original)).

Here, the ALJ does not explain how plaintiff's activities are inconsistent with any

of the opinions from Dr. Webster. For example, none of the activities noted are

inconsistent with Dr. Webster's opinion that even minor stressors in the work

environment could cause plaintiff to decompensate, or that she would likely have

frequent absences due to the symptoms (*see* AR. 1180). Therefore, the Court concludes

that this finding by the ALJ is not a specific and legitimate reason based on substantial

evidence in the record as a whole for the failure to credit fully Dr. Webster's opinion.

The ALJ also indicated reliance on plaintiff's ability to work prior to her alleged onset date as a reason to discount plaintiff's treating physician's opinions regarding limitations after that date. However, the ALJ also noted that plaintiff's "issues have reportedly worsened in the context of her unemployment" (AR. 33). Although the ALJ found that plaintiff's treatment records "indicate that this decline in her psychological state has been well-controlled by treatment that she commended appropriate to her application date, [April 9, 2012]," this finding is contradicted by the opinion from plaintiff's treating physician, Dr. Webster (*id*.). On September 27, 2013, Dr. Webster indicated that plaintiff's surgery for her back would not be considered until "her psychiatric concerns are under better control" (*see* AR. 1180). Therefore, for this reason and based on the record as a whole, the Court concludes that the ALJ's finding that plaintiff's decline in her psychological state after she became unemployed was well-controlled by treatment after her application date is not a finding based on substantial evidence in the record as a whole. The Court also concludes that the ALJ's finding that plaintiff's ability to work before her amended alleged onset date of April 9, 2012 is inconsistent with Dr. Webster's opinions regarding plaintiff's functional limitations in September, 2013 is not a finding based on substantial evidence in the record as a whole.

The ALJ also rejected his opinion based on plaintiff's "longitudinal findings" (AR. 33), noting a previous summary in the written decision (*see* AR. 22-23).

In her previous discussion, the ALJ found that plaintiff denied having problems with her personal care; routinely demonstrated cooperative and appropriate behavior, normal speech, good eye contact, normal psychomotor behavior and appropriate affect

during some examinations and counseling sessions; was getting along well with her

husband; was able to use public transportation; was residing in a communal dormitory

with dozens of other people without requiring medical attention due to anxiety or panic

attacks; and was displaying normal thought process, fair attention and concentration,

intact memory, normal cognition and average intellect during some examinations and

counseling sessions (AR. 22-25). However, plaintiff's contention that the ALJ only

referenced some of the findings from the record and "simply ignored evidence that did

not fit with their conclusions" has some merit (*see* Dkt. 11, p. 6 (citing *Reddick v. Chater*,

157 F.3d 715, 723 (9th Cir. 1998) ("ALJ is not permitted to develop her 'evidentiary basis

by not fully accounting for the context of materials and all parts of the testimony and

reports'")). *See also Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("the ALJ

improperly cherry-picked some of [the doctor's] characterizations of [the claimant's]

rapport and demeanor instead of considering these factors in the context of [the doctor's]

diagnoses and observations of impairment") (citations omitted); *Punzio v. Astrue*, 630

F.3d 704, 710 (7th Cir. 2011) ("by cherry-picking Dr. Mahmood's file to locate a single

treatment note that purportedly undermines her overall assessment of [the claimant's]

functional limitations, the ALJ demonstrated a fundamental, but regrettably all-too-

common, misunderstanding of mental illness") (collecting cases) (citations omitted). The

ALJ "has an independent 'duty to fully and fairly develop the record and to assure that

the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting *Brown

v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983) (per curiam))).

On May 7, 2012, plaintiff was assessed as "sad, tearful, depressed [and] fearful" (AR. 437); and on May 8, 2012, plaintiff was observed to be anxious and agitated, with suicidal ideation (AR. 467). Treatment records from May 9, 2012 indicate that plaintiff's "husband reports that [plaintiff] came at him with a knife" (AR. 531). On May 8, 2012, when plaintiff was taken to the hospital in an ambulance, she "was yelling and threatening staff" (AR. 444). According to the treatment record, plaintiff "was placed in four points restraints due to her hostility" (*id.*). The ALJ failed to note any of this evidence, and instead found that in May, 2012, "[at] the hospital, the claimant displayed calm and cooperative behavior  .  .  .  ." (AR. 23). This finding by the ALJ is not supported by substantial evidence in the record as a whole. In addition, the ALJ has erred by failing to discuss significant, probative evidence. *See Flores, supra*, 49 F.3d at 570-71 (quoting *Vincent, supra*, 739 F.2d at 1395). The Court also concludes that in this context of failing to discuss evidence to the contrary, the ALJ's finding that plaintiff routinely demonstrated cooperative and appropriate behavior is not based on substantial evidence in the record as a whole. *See Ghanim, supra*, 763 F.3d at 1164; *cf. Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("[s]heer disbelief is no substitute for substantial evidence").

Dr. Webster's opinions include that plaintiff is markedly limited in her ability to concentrate and perform on a consistent basis; would have severe limitation in her ability to work undistracted; that even minor stressors in the work environment could cause her to decompensate; would likely have frequent absences due to her symptoms; and that it would be very difficult for her to follow instructions from a supervisor (AR. 1180). The

ALJ failed to explain how any of the "longitudinal findings", listed seriatim, demonstrate

an inconsistency, as none of the findings or activities noted require performance on a

consistent basis; the ability to work undistracted; the ability to be free from

decompensation in a work environment with minor stressors; work full time without

frequent absences; or follow instructions from supervisors.

An "ALJ must do more than offer [her] conclusions [and] must set forth [her]own

interpretations and explain why they, rather than the doctors', are correct." *Embrey v.

Bowen*, 849 F.2d 418, 421-22 (9th 1988). Here, instead, the ALJ listed a number of

activities, such as cooking, cleaning and knitting, and listed some MSE results and

notations in the record. The ALJ's finding that these notations from the record are

inconsistent with Dr. Webster's opinions is not explained and furthermore, does not

account for much of the record, such as the declaration from Dr. Renée Eisenhauer, PhD,

under penalty of perjury, that in connection with plaintiff's May, 2012 hospitalization

plaintiff had experienced "significant decompensation prior to admission leading to

significant suicidality and her persisting suicidality while in the hospital" (AR. 550). On

May 21, 2012, Dr. Eisenhauer also noted that plaintiff was manifesting "a mental

disorder with depressed mood, feelings of hopelessness and helplessness, suicidal

ideation, tangentiality, flashbacks, pressured speech, poor judgment and poor impulse

control" and that plaintiff's treating medical provider "had found her depressed; [her]

affect, anxious; [with] rapid and pressured speech; tangential; delusional; with impaired

insight and judgment" (*id*.). Similarly, approximately seven months later, at her

admission MSE on December 15, 2012, as assessed by Dr. Veitengruber, M.D.,

1    plaintiff's appearance was disheveled, she was wringing her hands, her thought content

2    was marked by hallucinations and delusions, her mood was depressed, her affect was

3    "mildly agitated but working hard to be pleasant," she had limited judgment and insight

4    and her intention/concentration was "distractible" (AR. 887). On December 25, 2012, Dr.

5    Alexander Wesley Thompson, M.D., assessed plaintiff as having a manner of interacting

6    "consistent with someone with some developmental disabilities and substantial

7    personality problems" (AR. 1037). In early January, 2013, an attending physician

8    evaluated plaintiff and determined that she "may not be released from involuntary

9    commitment to accept treatment on a voluntary basis," and instead, plaintiff was provided

10   with a conditional release, a less restrictive Order ("LRO") requiring further treatment

11   (AR. 899). Plaintiff was again admitted to the hospital on August 21, 2013 for psychiatric

12   issues ("danger to self and danger to others") at which time she presented as helpless and

13   hopeless (*see* AR. 1156).

14

15         For the reasons stated and based on the record as a whole, the Court concludes that

16   the ALJ's reference to "longitudinal findings" does not entail an explanation of why the

17   ALJ's conclusion is more correct than that of Dr. Webster.  The Court concludes that this

18   is not a specific and legitimate reason based on substantial evidence in the record as a

19   whole for her failure to credit fully opinions of Dr. Webster.

20         In addition, the Court notes a similar Ninth Circuit case in which the court found

21   that an ALJ had failed to provide specific and legitimate reasons supported by substantial

22   evidence in the record for the failure to credit fully the opinion of a treating physician

23

24

even though the ALJ had reviewed the medical evidence. *Embrey, supra*, 849 F.2d at

421. The Ninth Circuit court explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.

*Id.* at 421-22 (internal footnote omitted).

Finally, the ALJ found that Dr. Webster's opinion "made no references to objective evidence to support its conclusion of psychological disability" (*id.*). The Court notes the following Social Security Ruling: "For treating sources, the rules also require that [the Social Security Administration makes] every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the basis for such opinions are not clear to us." Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2 at *6. Dr. Webster indicated his opinion that "[plaintiff] is unable to maintain competitive employment" (AR. 1180). This is an issue reserved to the Commissioner, and the ALJ explicitly indicated that the basis for this opinion is not clear from the record (*see* AR. 33).

Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir.

1989) (citing *Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (citing *Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356) (footnote omitted). This Ruling is not plainly erroneous or inconsistent with the Social Security Act or regulations.

Plaintiff contends that the ALJ erred by failing to obtain treatment records from Dr. Webster. As the ALJ noted a lack of objective evidence in the opinion from Dr. Webster supporting his conclusions, thus indicating that it was unclear what the basis for Dr. Webster's opinions were, and as Dr. Webster opined that plaintiff "is unable to maintain competitive employment" (AR. 1180), the ALJ should have made every reasonable effort to recontact Dr. Webster. *See* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2 at *6.

The ALJ's error in failing to credit fully the opinion from treating physician, Dr. Webster is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)).  Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an]

1    error harmless unless it can confidently conclude that no reasonable ALJ, when fully

2    crediting the testimony, could have reached a different disability determination." *Marsh*

3    *v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-

4    56). In *Marsh*, even though "the district court gave persuasive reasons to determine

5    harmlessness," the Ninth Circuit reversed and remanded for further administrative

6    proceedings, noting that "the decision on disability rests with the ALJ and the

7    Commissioner of the Social Security Administration in the first instance, not with a

8    district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

9            It is clear that Dr. Webster opined that plaintiff is unable to work, and his opinions

10   that plaintiff "would have severe limitation in her ability to work undistracted, and that

11   even minor stressors in the work environment could cause her to decompensate," as well

12   as his other opinions, such as that she "would likely have frequent absences due to the

13   symptoms, and it would be very difficult for her to follow instructions from a supervisor"

14   almost certainly would render her disabled if they are credited in full. Therefore the error

15   in failing to credit fully his opinion is not harmless. *See Marsh*, *supra,* 792 F.3d at 1173

16   (citing *Stout, supra,* 454 F.3d at 1055-56).

17          Plaintiff also contends that the ALJ erred when failing to credit fully opinions

18   from examining doctor, Dr. Mitchell.

19          As noted by the ALJ, September 2013, Dr. Mitchell examined plaintiff and opined

20   that plaintiff suffered from moderate limitations "in her abilities to ask simple questions,

21   to be aware of normal hazards, to make simple work-related decisions, to adapt to

22   changes in a routine work setting, to perform routine tasks, to learn new tasks, or to

1   understand and persistent simple instructions" (AR. 33). Also as noted by the ALJ, Dr.

2   Mitchell opined that plaintiff suffered from "marked to severe limitations in her abilities

3   to plan independently, to maintain appropriate behavior, to maintain attendance and

4   punctuality, or to complete a normal workday without psychological interruption" (*id.*

5   (citing AR. 1169-79)).

6       The ALJ failed to credit fully Dr. Mitchell's opinion, in part, based on a finding

7   that Dr. Mitchell did not provide an express basis for her assessment of moderate to

8   severe limitations (*id.*). However, the section of the form where Dr. Mitchell indicated

9   her opinion regarding the specific areas of functional limitation contains no space for an

10  explanation for each area of functional limitation (AR. 1171). However, when providing

11  her opinion regarding plaintiff's global assessment of functioning on that very same page,

12  Dr. Mitchell specifically indicated that her opinion regarding plaintiff's serious

13  impairment in social and occupational functioning is "based on client's presentation,

14  administration of MSE, client's self-report, and records reviewed" (*id.*). Therefore, based

15  on the record, the Court concludes that the ALJ's finding that Dr. Mitchell did not give an

16  express basis for her assessments of functional limitations is not based on substantial

17  evidence in the record as a whole. Furthermore, Dr. Mitchell conducted a mental status

18  examination ("MSE") and provided detailed description of her findings (*see* AR. 1172).

19

20

21      The Court notes that "experienced clinicians attend to detail and subtlety in

22  behavior, such as the affect accompanying thought or ideas, the significance of gesture or

23  mannerism, and the unspoken message of conversation. The Mental Status Examination

24

allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

For example, during her MSE, Dr. Mitchell noted that plaintiff's eye contact was limited and that her facial expressions were inappropriate for the content or the material "because she has flat affect, monotone voice, [and is] detached" (*id.*). Dr. Mitchell also observed objective "evidence of psychomotor agitation as indicated by she is a little on-edge, fidgety and nervous today" (*id.*). Dr. Mitchell observed that plaintiff's behavior was erratic and that there "was not any evidence of feigning or factitious behaviors" (*id.*). She also observed that although "the Rey 15 item test indicates fair cooperation [with] the

task," plaintiff demonstrated "poor ability" (*id*.). Dr. Mitchell observed that plaintiff "appeared sullen, anxious, [and] on edge" (AR. 1173). Dr. Mitchell also indicated that plaintiff's objective test results from the trail making tests demonstrated impaired concentration and an "extremely slow processing speed" (*id*.). Dr. Mitchell also included her objective observation that plaintiff's "remote memory is not intact as evidenced by client's inability to recount biographical history and other past events [and that] client cannot remember all the memory words after five minutes" (*id*.).

For all the stated reasons and based on the record as a whole, Court concludes that the ALJ's finding that Dr. Mitchell did not express a basis for her opinions is not based on substantial evidence in the record as a whole.

The ALJ also found that Dr. Mitchell's opinion is inconsistent with plaintiff's activities, referencing the previous portion of the written decision in which the ALJ noted plaintiff's cleaning, baking and cooking; ability to shop; meeting with a knitting group; seeing her friends from church; teaching looming skills to people in her church and community; knitting and crocheting with a knitting and crocheting group; reading; visiting the library once per week; and watching TV (*see* AR. 22-23, 33). However, the ALJ does not explain how these activities are inconsistent with any of the opinions from Dr. Mitchell. For example, none of the activities noted are inconsistent with Dr. Mitchell's opinion that plaintiff suffered from severe limitation in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms (*see* AR. 1171). Therefore, the Court concludes that this finding by the ALJ is

not a specific and legitimate reason based on substantial evidence in the record as a whole for the failure to credit fully the opinion of Dr. Mitchell.

The ALJ also found that Dr. Mitchell's opinion is inconsistent with plaintiff's work history; however, the ALJ also noted that plaintiff's "issues have reportedly worsened in the context of her unemployment" (AR. 33). As noted already, *see supra,* the ALJ's finding that plaintiff's treatment records "indicate that this decline in her psychological state has been well-controlled by treatment that she commended appropriate to her application date, [April 9, 2012]," is contradicted by the opinion from plaintiff's treating physician, and is not a finding based on substantial evidence in the record as a whole. The Court also concludes that the ALJ's finding that plaintiff's ability to work before her amended alleged onset date of April 9, 2012 is inconsistent with Dr. Mitchell's opinions regarding plaintiff's functional limitations in September, 2013 is not a finding based on substantial evidence in the record as a whole.

Finally, the ALJ found that Dr. Mitchell's opinion is inconsistent with plaintiff's "longitudinal examination findings," noting a previous summary in the written decision (*see* AR. 22-23, 33).

For similar reasons discussed above, *see supra*, this reasoning also is not specific and legitimate and supported by substantial evidence in the record as a whole for rejecting Dr. Mitchell's opinion. The ALJ did not explain how some MSE observations and notations in the record are inconsistent with Dr. Mitchell's opinions that plaintiff is unable to complete a normal workday and workweek without interruptions from psychologically-based symptoms outside of a sheltered work environment; that plaintiff

1    is unable to perform activities within a schedule, maintain regular attendance, and be

2    punctual within customary tolerances without special supervision, unless plaintiff is

3    afforded a sheltered work environment; and that she suffered from marked limitation in

4    her ability to adapt to changes in a routine work setting and communicate and perform

5    effectively in a work setting (AR. 1171). For example, none of the activities or

6    observations demonstrates an ability to persist and complete a normal workday and

7    workweek without interruptions from psychologically-based symptoms, to perform

8    activities within a schedule, maintain regular attendance, and be punctual to work, or to

9    adapt to changes and perform effectively in a work setting.

10

11           The ALJ's finding that these notations from the record are inconsistent with Dr.

12   Mitchell's opinions is not explained and furthermore, does not account for much of the

13   record, as discussed above with respect to Dr. Webster's opinion, *see supra*.

14           For the reasons stated and based on the record as a whole, the Court concludes that

15   the ALJ's reference to "longitudinal examination findings" does not entail an explanation

16   of why the ALJ's conclusion is more correct than those of Dr. Mitchell.  The Court

17   concludes that the ALJ failed to provide a specific and legitimate reason based on

18   substantial evidence in the record as a whole for his failure to credit fully opinions of Dr.

19   Mitchell.

20           The Court also concludes that the error is not harmless.

21           It is extremely likely that if Dr. Mitchell's opinions, noted above, are credited

22   fully, plaintiff would be found disabled. Therefore, the Court is unable to conclude with

23   confidence that "no reasonable ALJ, when fully crediting the testimony, could have

24

reached a different disability determination." *Marsh*, *supra,* 792 F.3d at 1173 (citing

*Stout, supra,* 454 F.3d at 1055-56). Therefore, the error is not harmless.

>    (2)    **Whether or not the ALJ properly evaluated the opinions of Lisa Cowden, Ph.D.; whether or not the ALJ properly evaluated the opinions of John Gilbert Ph.D. and Leslie Postovoit, Ph.D.; and whether or not the ALJ properly evaluated plaintiff's impairments under the Social Security Listings.**

The Court already has concluded that the ALJ erred in reviewing the medical

evidence and that this matter should be reversed and remanded for further consideration,

*see supra*, section 1. For the reasons stated and based on the record as a whole, the Court

concludes that following remand of this matter the ALJ should reevaluate all of the

medical evidence. For example, the ALJ gave "significant weight" to the opinions of the

state agency consultants, Dr. Gilbert and Dr. Postovoit, "because they are consistent with

the claimant's longitudinal examination findings and reported activities" (AR. 32).

However, the ALJ did not credit fully their opinion that plaintiff only could "respond

appropriately to superficial contact with others," instead finding that her activities

demonstrated that she could "tolerate routine social contact with others while persisting

with at least simple tasks" (*id.*). The ALJ did not cite to any evidence regarding plaintiff's

activities that demonstrate that she can tolerate occasional contact with supervisors, as

opposed to superficial contact with them.

>    (3)    **Whether or not the ALJ properly evaluated plaintiff's credibility**.

In addition, the evaluation of a claimant's statements regarding limitations relies in

part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p,

1  2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed

2  anew following remand of this matter.

3         (4)      **Whether this matter should be reversed and remanded with a direction
                    to award benefits or for further proceedings.**

4

5         Generally, when the Social Security Administration does not determine a

6  claimant's application properly, "'the proper course, except in rare circumstances, is to

7  remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*,

8  379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put

9  forth a "test for determining when [improperly rejected] evidence should be credited and

10 an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th

11 Cir. 2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

12        It is appropriate when:

13
          (1) the ALJ has failed to provide legally sufficient reasons for rejecting
14        such evidence, (2) there are no outstanding issues that must be resolved
          before a determination of disability can be made, and (3) it is clear from
15        the record that the ALJ would be required to find the claimant disabled
          were such evidence credited.
16

17 *Harman, supra,* 211 F.3d at 1178 (quoting *Smolen*, *supra*, 80 F.3d at 1292).

18 Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

19 First, there was no evaluation of the treating physician's records from Dr.

20 Webster. Furthermore, although the ALJ erred in failing to discuss some

21 significant, probative evidence, the evidence that the ALJ discussed suggests that

22 plaintiff may not be disabled. *See Garrison, supra,* 759 F.3d at 1021 (remand for

23

24

benefits is inappropriate if "the record as a whole creates serious doubt as to [if] the claimant is, in fact, disabled within the meaning of the Social Security Act").

<u>CONCLUSION</u>

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 8th day of July, 2016.

J. Richard Creatura
United States Magistrate Judge